## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BRANDON A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 24-4053-KHV |
| | ) | |
| BLUECROSS BLUESHIELD KANSAS | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

On June 13, 2024, plaintiff filed suit against his former employer, BlueCross Blue Shield Kansas Solutions, Inc. Plaintiff asserts claims for failure to accommodate (Count I), disability discrimination (Count II), hostile work environment (Count III) and retaliation (Count IV) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 701 et seq. (Count IV); failure to accommodate (Count V), disability discrimination (Count VI) and retaliation (Count VII) in violation of the Kansas Acts Against Discrimination ("KAAD"), K.S.A. § 44–1001 et seq.; and wrongful termination of employment in violation of Kansas law (Count VIII). See Amended Complaint (Doc. #3) filed July 23, 2024. This matter is before the Court on Defendant's Motion To Dismiss (Doc. #5) filed August 29, 2024. For reasons stated below, the Court sustains defendant's motion.

## Legal Standard

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim

which is plausible—and not merely conceivable—on its face.  Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions.  See id.  Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements.  See Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the alleged misconduct.  Iqbal, 556 U.S. at 678.  Plaintiff must show more than a sheer possibility that defendant has acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendant's liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## Factual Background

Plaintiff's amended complaint alleges as follows:

In November of 2015, plaintiff began working in defendant's Customer Service department.  In January of 2020, Jonathan Tuck became plaintiff's immediate supervisor.

Plaintiff suffers from a gastrointestinal condition that requires him to take extended breaks

during the work day. In December of 2021, Tuck questioned plaintiff about his extended breaks and requested an explanation. Tuck informed plaintiff that if he did not provide an explanation, defendant would not provide him an accommodation. In January of 2021, plaintiff visited his primary care physician, who completed defendant's disability forms. Plaintiff's physician specified that plaintiff needed two breaks between 15 and 20 minutes each day. Plaintiff provided the forms to defendant's Human Resources representative Andrea Irvin, and Irvin approved the accommodation for six months.

Over the next few months, Tuck would approach plaintiff and tell him that he needed to complete the disability forms or defendant would not accommodate him. Plaintiff informed Tuck that he had already provided the disability forms to HR. Tuck followed up with HR and shortly afterward, HR notified plaintiff that his accommodation had expired and that he had to submit new paperwork. Accordingly, in July of 2022, plaintiff visited his primary care physician, completed the disability forms and submitted them to HR. Defendant notified plaintiff that a committee had denied his request for an accommodation.[1]

In October of 2022, HR notified plaintiff that he was no longer able to take 20-minute breaks when using the restroom. In February of 2023, plaintiff noticed that defendant was docking his paid time off ("PTO") for break time that exceeded his weekly 20-minute allotted time. That same month, defendant filed his Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

In April of 2023, plaintiff met with HR representative April Gear to explain the issues occurring with his accommodation. After his meeting with her, plaintiff noticed that someone at

---

[1] Plaintiff does not provide the exact date that defendant denied his request for an accommodation, but his EEOC charge states that it occurred "in or about July 2022." Charge Of Discrimination (Doc. #6-1) filed August 29, 2024 at 2.

work was changing his inquiries,[2] which led Tuck to accuse plaintiff of not completing his work in a timely manner.

In September of 2023, Tuck and Adrienne Jones (another supervisor) met with plaintiff to discuss his "bad attitude towards Management." Amended Complaint (Doc. #3), ¶ 21. After this meeting, plaintiff felt harassed and requested that all future meetings be on the record.[3] Despite this request, management continued to schedule meetings with plaintiff off the record to discuss his accommodation request. When plaintiff again expressed that he wanted the meetings on the record, management considered him insubordinate.

In October of 2023, plaintiff was unable to log in to his computer to begin work. Technical support transferred plaintiff to Michelle Stanley (his manager), who informed plaintiff by telephone that defendant was terminating his employment. Plaintiff received a letter by FedEx explaining that he had until 5:00 P.M. to follow up with management or defendant was terminating his employment.[4] On October 26, 2023, defendant terminated plaintiff's employment.

As noted, on February 17, 2023, plaintiff had filed his Charge of Discrimination with the EEOC.[5] See Charge Of Discrimination (Doc. #6-1). Plaintiff's charge stated as follows:

> In or about February 2022 I turned in paperwork for my Disability and never heard anything. In or about July 2022 I was told I needed to refile with my employer although I already had. In or about July 2022 I requested a reasonable

---

[2]    Plaintiff does not describe what it means that someone was "changing his inquiries."

[3]    Plaintiff does not describe how meetings would have been "on the record," or how defendant could have complied with that request.

[4]    Plaintiff does not identify the exact date(s) on which these events occurred.

[5]    Plaintiff does not attach to the amended complaint a copy of his EEOC charge. Nevertheless, because the amended complaint refers to plaintiff's charge, see Amended Complaint (Doc. #3), ¶ 2, which is central to his claims, and defendant has submitted an indisputably authentic copy, the Court considers it on the motion to dismiss. GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1384 (10th Cir. 1997).

accommodation from my employer.  In or about July 2022 I was told I was denied but wasn't given a reason.  I know other coworkers who have also had difficulties getting reasonable accommodations and denied without explanation.  I believe I was discriminated against because of my disability, my record of disability, and/or being regarded as disabled in violation of the Americans with Disabilities Act of 1990, as amended.

Id. at 2.  On March 15, 2024, plaintiff received notice of his right to sue.[6]  See Notice Of Right To Sue (Doc. #11-1) filed September 26, 2024 at 6.

On June 13, 2024, plaintiff filed suit against defendant.  Plaintiff asserts seven counts under the ADA, the KAAD and the Rehabilitation Act for failure to accommodate, disability discrimination, hostile work environment and retaliation, and an eighth count under Kansas law for wrongful termination of employment.  Plaintiff alleges that (1) he is a disabled individual under the ADA and the KAAD and defendant failed to grant his accommodation request for extended restroom breaks (Counts I and V); (2) because of his disability, defendant did not allow him sufficient time for restroom breaks and terminated his employment (Counts II and VI); (3) because of his disability, defendant subjected him to a hostile work environment, which consisted of management threatening and demeaning him (Count III); and (4) after requesting an accommodation and filing an EEOC charge, defendant retaliated against him by terminating his employment (Counts IV, VII and VIII).  See Amended Complaint (Doc. #3).  On August 29, 2024, defendant filed its motion to dismiss.  See Motion To Dismiss (Doc. #5).

## Analysis

Under Rule 12(b)(6), defendant asks the Court to dismiss plaintiff's amended complaint in

---

[6]    Plaintiff does not attach to his amended complaint a copy of his right-to-sue letter.  In response to defendant's motion, however, plaintiff has produced it.  Again, the Court may consider documents referred to in the complaint if the documents are central to plaintiff's claim and the parties do not dispute the document's authenticity.  Alvarado v. KOB–TV, L.L.C., 493 F.3d 1210, 1215 (10th Cir. 2007).  Accordingly, the Court considers the right-to-sue letter.

its entirety. Specifically, defendant argues that (1) plaintiff failed to exhaust administrative remedies for his disability discrimination, hostile work environment and retaliation claims under the ADA and the KAAD (Counts II, III, IV, VI and VII); (2) because plaintiff has not alleged that he is an individual with a disability, his failure to accommodate, disability discrimination and hostile work environment claims under the ADA and the KAAD fail as a matter of law (Counts I, II, III, V and VI); (3) because plaintiff has not alleged that he suffered adverse employment action, his retaliation claim under the Rehabilitation Act fails as a matter of law (Count IV); and (4) wrongful termination is not a cognizable claim under Kansas common law (Count VIII).[7]

Plaintiff responds that the Court should overrule defendant's motion to dismiss because (1) he filed an amendment to his initial EEOC charge and thus has exhausted administrative remedies for all claims; (2) his amended complaint set forth a short and plain statement of the facts, as required by Rule 8(a), and therefore he has alleged sufficient facts for each of his claims; (3) defendant's arguments related to his retaliation and wrongful termination claims are better presented on a motion for summary judgment; and (4) he broadly pled his wrongful termination claim to cover public policy and statutory violations, and the decision about how to categorize the claim is better left for the pretrial order. In addition, plaintiff requests that if the Court dismisses any claim, it should do so without prejudice and allow him the opportunity to remedy any

---

[7]    Under Rule 12(b)(6), defendant also argues that the Court should dismiss plaintiff's hostile work environment claim under the ADA and retaliation claims under the ADA and the KAAD. Plaintiff has failed to exhaust administrative remedies for these claims, so the Court declines to address whether plaintiff's amended complaint states a claim for hostile work environment or retaliation. Because the Rehabilitation Act does not require exhaustion of administrative remedies, the Court still reviews whether plaintiff has stated a claim for retaliation under that statute. Edmonds-Radford v. Sw. Airlines Co., 17 F.4th 975, 986 (10th Cir. 2021) ("Although the same substantive standards apply under the Rehabilitation Act and the ADA, the applicability of the Rehabilitation Act is significant here because it, unlike the ADA, does not require the exhaustion of administrative remedies.") (internal citations omitted).

deficiency in his amended complaint.

## I.      Failure To Exhaust Administrative Remedies

Defendant argues that plaintiff did not exhaust administrative remedies for his disability discrimination, hostile work environment and retaliation claims under the ADA and the KAAD (Counts II, III, IV, VI and VII).   Under the ADA and the KAAD, plaintiff must exhaust administrative remedies before filing suit.    42 U.S.C. § 12117(a); K.S.A. § 44-1005(i). Accordingly, plaintiff may not bring an action based upon claims that were not part of a timely-filed EEOC charge for which plaintiff received a right-to-sue letter.    Lincoln v. BNSF Ry. Co., 900 F.3d 1166, 1181 (10th Cir. 2018).  The exhaustion requirement serves to (1) give notice of the alleged violation to the charged party—here, defendant—and (2) give the EEOC an opportunity to conciliate the claim.    Smith v. Cheyenne Ret. Invs. L.P., 904 F.3d 1159, 1164 (10th Cir. 2018). Courts are to liberally construe plaintiff's allegations in the EEOC charge, but the charge must still "contain facts concerning the discriminatory and retaliatory actions underlying each claim."    Id. The ultimate question is whether "the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge."  Id.

Defendant argues that plaintiff's charge does not allege disparate treatment based on disability, harassment based on disability or retaliation.  Accordingly, defendant asserts that plaintiff's charge is limited to failure to accommodate in July of 2022.  Plaintiff responds that he has exhausted administrative remedies because on November 7, 2023, he submitted and amended EEOC charge that asserted additional claims.  Plaintiff attached the amendment to his response to defendant's motion.  Defendant argues that the purported amendment is not a proper charge because it is unverified by oath or affirmation as required by 42 U.S.C. § 2000e-5(b) and 29 C.F.R.

§ 1601.9.

Charges must be in writing, signed and verified.  See 42 U.S.C. § 2000e-5(b) ("Charges shall be in writing under oath or affirmation."); 29 C.F.R. § 1601.9 ("A charge shall be in writing and signed and shall be verified.").  A charge is "verified" when it is (1) sworn to or affirmed before a notary public, designated representative of the EEOC or other person duly authorized by law to administer oaths and take acknowledgements or (2) supported by an unsworn declaration in writing under penalty of perjury.  29 C.F.R. § 1601.3(a).   The purpose of the verification requirement is to protect an employer from frivolous claims because the EEOC will not begin its investigation of a charge until it is verified.  Peterson v. City of Wichita, Kan., 888 F.2d 1307, 1309 (10th Cir. 1989).

Here, while plaintiff did sign his amendment, it is not verified.  Plaintiff's document was not sworn to or affirmed before an individual duly authorized by law to administer oaths, and he did not accompany his amendment with a declaration that he completed it under penalty of perjury.  Also, plaintiff does not allege that the EEOC ever received this charge, opened an investigation on the new allegations or issued a right-to-sue letter based on the new allegations.  Accordingly, the unverified amended charge would appear to be irrelevant to the issue of exhaustion.

Furthermore, on a motion to dismiss under Rule 12(b)(6), the Court cannot consider documents outside the complaint if the parties dispute their authenticity.  Alvarado, 493 F.3d at 1215.  Here, the complaint makes no reference to any amendment; it only references his charge and right-to-sue letter.  The complaint states that "[s]ome of these claims were included in a timely administrative charge filed with the [EEOC]" and that "[t]he EEOC issue[d] a right-to-sue letter." Amended Complaint (Doc. #3), ¶ 2.  For these reasons, the Court does not consider plaintiff's purported amendment.

Plaintiff's charge, for which he received a right-to-sue letter states, as follows:

In or about February 2022 I turned in paperwork for my Disability and never heard anything.  In or about July 2022 I was told I needed to refile with my employer although I already had.  In or about July 2022 I requested a reasonable accommodation from my employer.  In or about July 2022 I was told I was denied but wasn't given a reason.  I know other coworkers who have also had difficulties getting reasonable accommodations and denied without explanation.  I believe I was discriminated against because of my disability, my record of disability, and/or being regarded as disabled in violation of the Americans with Disabilities Act of 1990, as amended.

Charge Of Discrimination (Doc. #6-1).

Plaintiff's complaint asserts ADA claims of failure to accommodate (Count I), disability discrimination (Count II), hostile work environment (Count III) and retaliation (Count IV), and KAAD claims of failure to accommodate (Count V), disability discrimination (Count VI) and retaliation (Count VII).   Plaintiff's charge alleges failure to accommodate and disability discrimination.  Plaintiff alleges that because of his disability, defendant made him refile accommodation forms and denied his request for an accommodation.  Plaintiff further alleges that because of his disability, defendant discriminated against him.   Although conclusory and sparse, these allegations would have put the EEOC and defendant on notice of plaintiff's claim of discrimination.  Indeed, a disability discrimination claim "reasonably grows out of" a failure to accommodate claim, which is itself a form of disability discrimination.  Plaintiff's charge alleges failure to accommodate and, liberally construing it, disability discrimination.  The Court therefore overrules defendant's motion to dismiss plaintiff's claims of disability discrimination (Counts II and VI) for failure to exhaust administrative remedies.

As for plaintiff's hostile work environment and retaliation claims, on its face, plaintiff's charge does not allege these claims.  Defendant argues that because plaintiff's charge does not allege that he suffered any harassment or retaliatory action for requesting an accommodation, he

has not exhausted these claims. The Court must liberally construe plaintiff's charge and where plaintiff seeks judicial relief for conduct not listed in the charge, the judicial complaint may still encompass any claim "which would reasonably grow out of the charges actually made in the EEOC charge." Smith, 904 F.3d at 1164. The Court therefore considers whether these claims reasonably grow out of plaintiff's allegations of discrimination based on failure to accommodate.

Plaintiff's hostile work environment claims are not reasonably related to his disability discrimination and failure to accommodate claims. Plaintiff's hostile work environment claim is based on his allegations that defendant's leadership subjected him to threatening, demeaning and abusive conduct, which created an abusive work environment. By contrast, plaintiff's discrimination and failure to accommodate claims are premised on plaintiff's allegations that he turned in his accommodation paperwork, had to re-file his paperwork and then defendant denied his accommodation request. A hostile work environment claim, which requires plaintiff to allege severe or pervasive harassment, cannot reasonably grow out of a discrete act of discrimination based on failure to accommodate. See Aramburu v. Boeing Co., 112 F.3d 1398, 1409–10 (10th Cir. 1997) (hostile work environment not reasonably related to discrete act of discrimination for wrongful discharge).

Furthermore, plaintiff's retaliation claims are not reasonably related to the allegations in his charge. Because plaintiff's charge does not allege that he engaged in protected opposition to discrimination, a retaliation claim cannot reasonably grow out the allegations listed therein. Plaintiff's hostile work environment and retaliation claims therefore fall squarely outside the scope of the EEOC's administrative investigation. An investigation for failure to accommodate would not have reasonably led to an investigation of a hostile work environment or a retaliatory termination. The allegations in the charge would not have allowed the EEOC to reasonably

investigate and conciliate the claims, or reasonably put defendant on notice of such claims. Plaintiff therefore did not exhaust administrative remedies for Counts III, IV and VII. The Court sustains defendant's motion to dismiss plaintiff's Count III, IV and VII claims for hostile work environment and retaliation for failure to exhaust administrative remedies under the ADA and the KAAD.

## II.     Whether Plaintiff Alleges Disability

Defendant argues that the Court should dismiss plaintiff's remaining ADA and KAAD claims—failure to accommodate (Counts I and V) and disability discrimination (Counts II and VI)—for failure to allege membership in a protected class, i.e. that plaintiff is a disabled individual. Plaintiff responds that because Rule 8(a), Fed. R. Civ. P., only requires him to make "a short and plain statement of the claim showing that [he] is entitled to relief," he has sufficiently alleged membership in a protected class. Plaintiff asserts that (1) he is a disabled individual under the ADA because he has a gastrointestinal condition that requires him to take extended breaks; (2) his physician identified his disability and completed the necessary documentation for an accommodation; and (3) defendant received those forms and for a period of time, provided plaintiff an accommodation.

The ADA prohibits discrimination in employment against a qualified individual on the basis of disability. See 42 U.S.C. § 12112(a). Under the ADA, discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." Id. § 12112(b)(5)(A). To state a claim for failure to accommodate under the ADA and the KAAD, plaintiff must allege that (1) he is disabled; (2) he is otherwise qualified for the job;

and (3) he requested a plausibly or facially reasonable accommodation.  Brown v. Austin, 13 F.4th 1079, 1084–85 (10th Cir. 2021) (elements under ADA); Hutchings v. Kuebler, 5 F. Supp. 2d 1186, 1196 (D. Kan. 1998) (same under KAAD).

To allege that he is disabled under the ADA and the KAAD, plaintiff must allege either (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment.  42 U.S.C. § 12102(1); K.S.A. § 44-1002(j).  Although courts broadly construe the term "disability," Allen v. SouthCrest Hosp., 455 F. App'x 827, 834 (10th Cir. 2011), this does not relieve plaintiff from pleading facts demonstrating he is disabled under the statute, see Steele v. Thiokol Corp., 241 F.3d 1248, 1253 (10th Cir. 2001).  Without facts regarding the extent of the limitations caused by the impairment, a medical diagnosis alone is insufficient to allege a disability.  Wilkerson v. Shinseki, 606 F.3d 1256, 1262 (10th Cir. 2010).

A plaintiff seeking to allege disability under a "record of" disability must allege five elements: (1) plaintiff has a record of, or has been misclassified as having, (2) a recognized impairment that (3) plaintiff actually suffered and that (4) substantially limited (5) a major life activity.  Doebele v. Sprint/United Mgt. Co., 342 F.3d 1117, 1129, 1132 (10th Cir. 2003).  Here, defendant asserts that plaintiff has not alleged the fourth or fifth elements.

A "major life activity" is a basic activity that the average person can perform with little or no difficulty, including caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, standing, lifting, sleeping and working.  Glover v. NMC Homecare, Inc., 106 F. Supp. 2d 1151, 1166 (D. Kan. 2000), aff'd, 13 F. App'x 896 (10th Cir. 2001).  To allege that an impairment substantially limits the major life activity of working, plaintiff must allege a "significant restriction in the ability to perform either a class of jobs or a broad range of

jobs in various classes as compared to the average person having comparable training, skills and abilities." Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir. 1994). Courts consider several factors to determine whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected permanent or long-term impact, of or resulting from the impairment. Rakity v. Dillon Cos., Inc., 302 F.3d 1152, 1158 (10th Cir. 2002).

Defendant argues that plaintiff has not alleged that his gastrointestinal condition substantially limits a major life activity. Specifically, defendant notes that plaintiff merely alleges that his condition requires him to "take extended breaks" while working and that this statement alone does not allege an impairment which substantially limits a major life activity. Amended Complaint (Doc. #3), ¶ 28. The Court agrees. While plaintiff has alleged that his physician completed the necessary accommodation forms, he has not alleged that his gastrointestinal condition significantly restricted his ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. Indeed, plaintiff has not alleged that his gastrointestinal condition significantly restricted his ability to perform his job with defendant. Plaintiff does not allege the nature or severity of his gastrointestinal condition, the duration of it, how often it impacts him, whether the impact is permanent or long term or how it impacts his actual job.

The conclusory allegation that plaintiff suffers from a gastrointestinal condition that requires him to take extended breaks does not allege a "disability" under the ADA or the KAAD. See Deprisco v. Delta Air Lines, Inc., 90 F. App'x. 790, 794–95 (6th Cir. 2004) (extra breaks during day not substantial limitation on ability to work). The Court therefore sustains defendant's motion to dismiss plaintiff's claim for failure to accommodate under the ADA and the KAAD

-13-

(Counts I and V) for failure to state a claim upon which relief may be granted.

## III.    Whether Plaintiff States A Claim Under The Rehabilitation Act

Defendant argues that the Court should dismiss plaintiff's retaliation claim under the Rehabilitation Act (Count IV) because plaintiff has not alleged that he suffered adverse employment action causally connected to his engagement in protected activity.

In the same count as his claim for retaliation under the ADA, plaintiff asserts a claim for retaliation under the Rehabilitation Act. Plaintiff does not allege that defendant is an entity regulated by the Rehabilitation Act—that is, a federal agency or a recipient of federal funds for the limited purposes set forth in 29 U.S.C. §§ 793 and 794.[8] Defendant did not separately argue that the Court should dismiss plaintiff's retaliation claim on this ground, but nevertheless, plaintiff does not state a claim under the Rehabilitation Act. The Court therefore sustains defendant's motion to dismiss plaintiff's retaliation claim under the Rehabilitation Act.

## IV.    Whether Wrongful Termination Is A Cognizable Claim

Defendant argues that the Court should dismiss plaintiff's wrongful termination claim

---

[8]       Title 29, United States Code, Section 793 provides in part as follows:

Any contract in excess of $10,000 entered into by any Federal department or agency for the procurement of personal property and nonpersonal services (including construction) for the United States shall contain a provision requiring that the party contracting with the United States shall take affirmative action to employ and advance in employment qualified individuals with disabilities.

Title 29, United States Code, Section 794 provides in part as follows:

No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

(Count VIII) under Kansas state law for failure to state a cognizable common law claim.

Kansas law adheres to the employment-at-will doctrine, which holds that absent an express or implied contract governing the employment's duration, "employees and employers may terminate an employment relationship at any time, for any reason." Campbell v. Husky Hogs, L.L.C., 292 Kan. 225, 227, 255 P.3d 1, 3 (2011). Of course, statutory exceptions to this general rule exist—such as for terminations based on race, gender or disability—as well exceptions based on Kansas state public policy. Id. The Kansas Supreme Court has recognized a public policy exception for retaliatory discharge, or wrongful termination of employment. Id. Application of this exception is unnecessary, however, when plaintiff is already protected by a statutory remedy under either state or federal law. Conner v. Schnuck Markets, Inc., 906 F. Supp. 606, 615 (D. Kan. 1995), aff'd, 121 F.3d 1390 (10th Cir. 1997). In that case, under the adequate alternative remedy doctrine, if an adequate federal or state remedy is available, Kansas common law precludes a public policy claim. See Polson v. Davis, 895 F.2d 705, 709 (10th Cir. 1990); Flenker v. Willamette Indus., 266 Kan. 198, 202–03, 967 P.2d 295, 299 (1998).

Under Kansas law, the KAAD "provides an adequate and exclusive state remedy for violations of the public policy enunciated therein." Polson, 895 F.2d at 709. Indeed, the Kansas legislature has declared that the KAAD is the Kansas policy on preventing and eliminating discrimination in employment based on disability. K.S.A. § 44-1001 ("It is hereby declared to be the policy of the state of Kansas to eliminate and prevent discrimination in all employment relations"). The KAAD also specifically contains an anti-retaliation provision. K.S.A. § 44-1009.

Here, defendant argues that because the KAAD occupies the space for wrongful termination claims and provides the exclusive remedy for employment discrimination claims under Kansas state law, plaintiff cannot assert a common law tort claim for wrongful termination.

-15-

Plaintiff responds that he broadly pled his wrongful termination claim to encompass violations of public policy and the KAAD. Plaintiff argues that at this juncture, his claim is appropriate and the Court need not categorize the claim until the parties finalize the pretrial order, which will set forth the claims for trial.

Initially, the Court reminds plaintiff that on a motion to dismiss, it reviews the factual allegations and claims set forth in his complaint, and will not allow an insufficiently stated cause of action to proceed in the hopes that plaintiff will clarify his exact claims in the pretrial order. The KAAD provides plaintiff an adequate remedy to pursue his discrimination and/or retaliation claims in this matter. Daniels v. United Parcel Serv., Inc., 797 F. Supp. 2d 1163, 1197 (D. Kan. 2011), aff'd, 701 F.3d 620 (10th Cir. 2012) (Title VII, the ADEA, the KAAD and the KADEA all provide adequate remedies). Therefore, to the extent plaintiff asserts his wrongful termination claim (Count VIII) under Kansas common law, plaintiff has an adequate and exclusive statutory remedy and the Court sustains defendant's motion to dismiss the claim. To the extent that plaintiff asserts his wrongful termination claim under the KAAD, the Court dismisses that claim as duplicative of plaintiff's Counts VI and VII claims for discrimination and retaliation in violation of the KAAD.

## V.    Request For Leave To Amend His Amended Complaint

At the end of his response, plaintiff requests that if the Court dismisses any claim, it grant him "an option to remedy such deficiency and that such claim be dismissed without prejudice." Plaintiff's Response To Defendant's Motion To Dismiss (Doc. #11) at 8.

Rule 15(a), Fed. R. Civ. P., allows a party to amend his pleading with the opposing party's consent or with leave of court. Fed. R. Civ. P. 15(a)(2). The Court should freely grant leave when justice so requires. Id. Generally, a party must file a motion to amend before the Court will grant

leave to amend.  Calderon v. Kan. Dep't of Soc. & Rehab. Servs., 181 F.3d 1180, 1185–86 (10th Cir. 1999).  If a party does not file a formal motion to amend his pleading, the Tenth Circuit provides that a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis for the proposed amendment before the Court must recognize that a motion for leave to amend is before it.  Id. at 1186–87.  However, a plaintiff's bare request in response to a motion to dismiss "that leave be given to the Plaintiffs to amend their Complaint" is insufficient.  Id. at 1186 (quoting Glenn v. First Nat'l Bank, 868 F.2d 368, 370 (10th Cir. 1989)).

Here, plaintiff's bare request to remedy any deficiencies in his amended complaint does not provide adequate notice to the Court or defendant whether any amendment would be appropriate.  As a result, the Court denies plaintiff's request to amend his amended complaint and dismisses the complaint in its entirety.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Dismiss (Doc. #5) filed August 29, 2024 is **SUSTAINED.**

Dated this 5th day of November, 2024 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-17-